

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1290 | **DATE** | 6/21/2001 |
| **CASE TITLE** | NISSAN NORTH AMERICA, INC. vs. JIM M'LADY OLDSMOBILE, INC. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth above M'Lady's motion to dismiss is denied (#10) and Nissan's motion to compel arbitration before JAMS/ENDISPUTE granted (#1). All proceedings in the case of *M'Lady v. Nissan,* No. 78-00, Illinois MVB, are hereby stayed. This case is hereby terminated. This is a final and appealable order. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 25 2001 | 16 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 6/21/2001 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| CG | courtroom deputy's initials | 01 JUN 25 PM 12:25 Date/time received in central Clerk's Office | CG mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NISSAN NORTH AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | No. 01 C 1290 |
| ) | Judge Ronald A. Guzman |
| v. ) | |
| ) | |
| JIM M'LADY OLDSMOBILE, INC. d/b/a ) | |
| JIM M'LADY NISSAN ) | **DOCKETED** |
| ) | JUN 2 5 2001 |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This is an action to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, and to stay a state court administrative proceeding brought by the respondent against the petitioner in Illinois. Respondent has moved to dismiss the petition to compel arbitration. The court has carefully considered the parties submissions, and for the reasons set forth below petitioner's motion to compel arbitration is granted and respondent's motion to dismiss denied.

## BACKGROUND FACTS

On May 21, 1992, Nissan North America, Inc. ("Nissan") and M'Lady Oldsmobile, Inc. ("M'Lady") entered into a Nissan Dealer Term and Sales and Service Agreement ("Dealer Agreement"). At that time, M'Lady conducted dealership operations for Oldsmobile and Isuzu as well as for Nissan in the same dealership facilities. Under Articles Twelfth(d) of the Dealer Agreement M'Lady agreed to provide Exclusive Nissan Dealership Facilities, i.e Exclusive

1



Nissan Service Facilities and Exclusive Nissan Showroom on or before April 25, 1995.

In Amendment No. 1 to the Dealer Agreement, dated May 12, 1994, Nissan extended the deadline for completion and operation of an Exclusive Nissan Dealership facilities, with separate deadlines established for the Service facilities to October 1, 1994 and for the Sales facilities, i.e. the Exclusive Nissan Showroom to November 1, 1996.

In Amendment No. 2 to the Dealer Agreement, dated September 27, 1994, Nissan extended the completion date for the Exclusive Service facilities to March 31, 1995. M'Lady's Exclusive Service Facilities were ultimately completed and became operational on November 20, 1995.

Amendment No. 3 to the Dealer Agreement merely provided for a change of personal address of James M'Lady.

In Amendment No. 4, dated May 18, 1998, Nissan provided that on or before July 1, 1998 M'Lady shall submit for [Nissan's] approval plans for the construction/renovation of the Exclusive Nissan Showroom; and (b) on or before September 1, 1998 Dealer shall submit to seller a signed contract for the construction/renovation of the Exclusive Nissan Showroom; and (c) on or before November 1, 1998 Dealer shall commence construction/renovation of the Exclusive Nissan Showroom; and (d) on or before May 1, 1999 Dealer shall complete the construction/renovation of the Exclusive Nissan Showroom and have it fully operational.

Amendment No. 4 further provided that the new Dealership facilities must be fully operation on or before the expiration of the term of this Agreement. Failure by [M'Lady] to meet any of the interim deadlines set forth above to provide the facilities described, by May 1, 1999, shall constitute a material breach of the Agreement and shall constitute good cause for

termination under Section 710/4(e)(6) and 710/12 of the 815 ILCS or any successor statute.

Nissan will not be obligated to offer any further extensions.

Amendment No. 4 also contained an expansive arbitration provision which provided the following:

> The parties acknowledge that, at the state and federal levels, various courts and agencies would, in the absence of this Amendment No. 4, be available to them to resolve claims or controversies which might arise between them. The parties agree that it is inconsistent with their relationship for either to use courts or governmental agencies to resolve such claims or controversies.
> THEREFORE, CONSISTENT WITH THE PROVISION OF THE UNITED STATES ARBITRATION ACT (9 U.S.C. §§ 1 et seq.), NISSAN AND DEALER AGREE THAT BINDING ARBITRATION AS OUTLINED IN THIS AMENDMENT NO. 4 SHALL BE THE EXCLUSIVE MECHANISM FOR RESOLVING ANY DISPUTE, CONTROVERSY, OR CLAIM ARISING OUT OR RELATING IN ANY WAY TO THE AGREEMENT AND AMENDMENT NO. 4, INCLUDING BUT NOT LIMITED TO CLAIMS UNDER ANY STATE OR FEDERAL STATUTES (hereinafter "disputes").
>
> All disputes arising out of the Nissan Dealer Sales and Service Agreement, including this Amendment No. 4, (hereinafter referred to collectively as the "Agreement") must be submitted to Binding Arbitration with JAMS/ENDISPUTE, an independent and professional agency providing arbitration services, unless that step is waived by written agreement of the parties. Should any party need to enforce this "Agreement" through arbitration, then the prevailing party shall be entitled to recover all of its costs (including attorney fees) from the other party. All awards of the arbitration are binding and non-appealable except as otherwise provided in the United States Arbitration Act. Judgment upon any award rendered by the arbitrator(s) may be entered and enforced in any court having jurisdiction.

For various reasons the construction of M'Lady's Exclusive Nissan Showroom never took place. By letter dated April 14, 1999, Nissan notified M'Lady of its contractual default but offered to extend the Dealer Agreement for 60 days if M'Lady committed to cure its material beach and commence construction of the Exclusive Nissan Showroom. M'Lady provided that

commitment by letter dated May 17, 1999. Nissan subsequently extended the term of its Dealer Agreement on approximately three more occasions. M'Lady admits that it signed the Dealer Agreement and the Amendments thereto but denies that it agreed to the exclusivity provisions as well as to any terms that altered the parties original agreement.

Ultimately, on October 3, 2000, Nissan issued a final Notice of Termination of the Dealer Agreement. On October 20, 2000 M'Lady filed a protest with the Illinois Motor Vehicle Board ("MVB")[1] challenging the termination of its Dealer Agreement. M'Lady alleged in its protest petition that Nissan did not have good cause to terminate the Dealer Agreement which is a violation of the Illinois Motor Vehicle Franchise Act, 815 ILCS 710/4(d)(6). On November 17, 2000 Nissan filed its arbitration demand with JAMS/ENDISPUTE and filed a motion with the MVB to stay the protest proceedings pending arbitration before JAMS/ENDISPUTE. M'Lady objected to the arbitration and has refused to participate in the arbitration, the exception being, for purposes of protecting its rights and without waiving its objections.

On February 7, 2001, after considering briefs submitted by the parties, the Hon. Lawrence Waddington, a lead neutral for JAMS/ENDISPUTE, ruled that the parties had agreed to submit the questions or arbitrability to arbitration and that arbitration should proceed. Judge Waddington explained that the "resolution of 'arbitrability' is primarily a judicial question unless the parties have agreed [to submit the question to arbitration]." He held that Nissan and M'Lady had agreed

---

[1] The Board was specifically created by the Illinois Legislature under the Illinois Motor Vehicle Franchise Act ("IMVFA") 815 ILCS 710/16. The IMVFA regulates the conduct and activities of motor vehicle manufacturers and dealers operating in the State of Illinois. 815 ILCS 710/1. The Board was formed by and is administered through the Illinois Secretary of State. 815 ILCS 710/19. The IMVFA is also administered by the Illinois Secretary of State. 815 ILCS 710/22.

4

that an arbitrator would decide disputes over arbitrability. He found that the Dealer Agreement "provides that JAMS, the arbitral institutional provider, will administer the arbitration."

Nissan moved to stay the administrative proceedings in front of the MVB pending conclusion of the arbitration. On February 14, 2001, at the conclusion of oral argument on Nissan's motion to immediately stay, the Hearing Officer denied Nissan's motion to stay and permitted M'Lady to proceed with discovery with respect to arbitrability. Oral discovery was to be completed by May 25, 2001 and all motions regarding the issue of arbitrability were to be filed with the MVB by June 8, 2001. This matter is set for hearing on the issue of arbitrability before the MVB on June 28, 2001.

On February 26, 2001, Nissan filed its Verified Petition to Compel Arbitration and to Enjoin M'Lady from proceeding before the MVB pursuant to Section 4 of the Federal Arbitration Act. This petition seeks an order compelling M'Lady to arbitrate this termination dispute and enjoining it from proceeding before the MVB.

M'Lady moves to dismiss or stay Nissan's petition to compel arbitration and cross moves for injunctive relief on the following grounds: (i) that there is a prior-filed parallel action pending before the MVB, (ii) that the action is barred by *res judicata*, and (iii) that the request for an injunction fails to state a claim. Each will be addressed in turn.[2]

---

[2] Nissan has argued that M'Lady's motion to dismiss is procedurally improper in light of the summary nature of the FAA and this court should deny the motion to dismiss on procedural grounds. This issue was already raised before the court and the court determined that it would proceed on M'Lady's motion. Furthermore, motions to dismiss a petition to compel arbitration on *res judicta* grounds have been found to be procedurally proper. *See, e.g. Towers Perrin, Forester & Crosby, Inc. v. Brown,* 732F,2d 345 (3rd Cir. 1984).

## JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The arbitrability of the dispute in the instant case is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. because the franchise agreement was executed between entities from Illinois and California and authorized the transfer of vehicles across state lines. Further, the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Venue is proper in this District court under the provisions of 28 U.S.C. § 1391.

## DISCUSSION

The FAA requires courts to stay a suit or proceeding if the issue is referable to arbitration under an agreement in writing. 9 U.S.C. § 3. (1996).[3] The FAA creates the presumption that a contractual arbitration clause should be enforced unless "it may be said with positive assurance that the arbitrations clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650. 106 S. Ct. 1415, 1419, 89 L. Ed. 2d 648 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ... *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983). The questions of whether the parties agreed to arbitrate is one to be decided by the court, not the arbitrator. *AT & T*

---

[3] 9 U.S.C. § 3 provides:
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Technologies,* 475 U.S. at 649, 106 S. Ct. at 1418-19.

## Abstention Under the Colorado River Doctrine

Because M'Lady's protest was filed with the MVB approximately four months prior to the filing of this action, the court must decide, an initial matter, whether principles of comity, federalism and judicial economy require (or permit) this court to defer to the MVB and let it decide all issues, including the issue of whether M'Lady's claims are subject to arbitration. "Abstention from the exercise of federal jurisdiction is the exception not the rule." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483. The doctrine of abstention is a narrow exception to the duty of a district court to adjudicate a controversy properly before it, and traditionally was exercised only in three circumstances: (1) when a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law. *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed 971 (1941); (2) when there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 91943); or (3) when, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, *Younger v. Harris,* 401 U.S. 37, 91. S. Ct. 746, 27 L. Ed. 2d 669 (1971). The case at bar does not fall within any of these three categories of the abstention doctrine.

However, in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976), the Supreme Court held that a district court could

properly defer to a state court and dismiss a federal suit not only under the three categories of abstention but also on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" 424 U.S. at 817, 96 S. Ct. at 1246, quoting *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S. Ct. 219, 221, 96 L. Ed. 200 (1952).

In making this determination, the Court must apply a two part analysis. First, the Court must decide if the federal and state proceedings are truly parallel. *See Colorado River,* 424 U.S. at 817 (quoting in part *McClellan,* 217 U.S. at 282)("Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is not a bar to proceedings concerning *the same matter* in the Federal Court having jurisdiction...'")(emphasis added); *Moses H. Cone,* 460 U.S. at 13 (framing the issue as "the propriety of ...stay[ing] this federal suite out of deference to the parallel litigation brought in state court.") (emphasis added). The parallelism requirement insures that if the federal district court decides to stay its proceedings, there will be a "complete and prompt resolution between the parties," such that the federal court "will have nothing further to do in resolving any substantive part of this case, whether it stays or dismisses." *Moses H. Cone,* 460 U.S. at 28. As to the parallelism issue, we find that this factor is clearly satisfied because we have the same parties litigating the same issues in both forums.

Second, if the two proceedings are found to be sufficiently parallel, the Court proceeds to apply the factors of the "exceptional circumstances" test to determine whether judicial efficiency outweighs the court's "virtually unflagging obligation to exercise jurisdiction." *See Colorado River,* 424 U.S. at 817. The Supreme Court has recognized there are certain extremely limited circumstances in non-exclusive federal jurisdiction cases where a federal court may defer to

8

pending state court proceedings based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.*

Although such circumstances are "extremely limited," they nevertheless do exist. *See, id.* at 818. This determination does not rest on a mechanical checklist, but on various, relevant factors that may apply in a given case. *See Moses H. Cone,* 460 U.S. at 16. No one factor is determinative. *Id.* The weight to be given to any one factor may vary greatly from case to case, and should be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. *Id.* at 16, 21. In weighing these factors, the balance is heavily weighted in favor of the exercise of jurisdiction by the federal court by virtue of its "virtually unflagging obligation to exercise jurisdiction." *See id.* at 16.

In *Colorado River,* the Supreme Court identified four factors which a district court should consider when determining if "exceptional circumstances" exist to justify granting a stay of the federal court action. They include: (1) the presence of a res or property over which jurisdiction has been asserted; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the proceedings were initiated. *See Colorado River,* 424 U.S. at 818. Two additional factors were added in *Moses H. Cone*: (5) whether the federal law provides the rule of law on the merits; and (6) the adequacy of the state court proceeding to protect plaintiff's rights. *See Moses H. Cone,* 460 U.S. at 23, 26. The Supreme Court went on to state, however, "Only the clearest of justifications will warrant dismissal" by the federal court. 424 U.S. at 819, 96 S. Ct. at 1247.

In *Moses H. Cone,* a case wherein the district court stayed its action pending a resolution of the state court action since both actions involve the arbitrability of the plaintiff's claims, the

Supreme Court stated:

> [W]e emphasize that our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction of the district court; rather, the task is to ascertain whether there exist "exceptional circumstances," the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction. Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender, ...the presence of federal-law issues must always be a major consideration weighing against surrender. 460 U.S. at 25-26, 103 S. Ct. at 941-942 (footnote omitted)..

Applying the *Colorado River/Moses H. Cone* factors to this case, the court finds that there has been no showing of the requisite "exceptional circumstances" to justify this court's abstaining from exercising jurisdiction.

The first exceptional circumstances factor may be disregard since there was no assumption by either court of jurisdiction over any res or property. Since the question or arbitrability is a legal issue, which has already been briefed by all parties, the court finds that there is no inconvenience suffered by M'Lady by having that issue arbitrated by JAMS/ENDISPUTE instead of before the MVB. Once the arbitrator decides any arbitrability objections, the underlying termination dispute will be resolved in a single forum--either by JAMS/ENDISPUTE or by the MVB and piecemeal litigation will be avoided. The fact that the state administrative action was filed first does weigh slightly in M'Lady's favor. However, that action was instituted approximately four months prior to the filing of this action, and this court finds that the petitioners acted promptly in filing their federal action. Furthermore, the Supreme Court noted in *Moses H. Cone* that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." 460 U.S. at 21, 103 S. Ct. at 939-940. This court notes that the proceedings before the

MVB are at a preliminary stage where the hearing officer denied Nissan's immediate motion for a stay and it has not progressed beyond the initial discovery stage with respect to arbitrability. The Hearing Officer made it clear that he would be conducting further proceedings as to the issue of arbitrability and the merits of Nissan's motion to stay. More specifically, the Hearing Officer stated: "[J]ust to clarify...[,] [Nissan's] motion for an immediate stay has been denied. [But I have not yet] determine[d] arbitrability and ...in fact depending on how that ruling goes, [it] may be the fact that [Nissan's] Motion to Stay is granted." (Exhibit C at 4:21-5:8) Moreover, Nissan had no notice that M'Lady would repudiate its duty to arbitrate until it filed its protest with the MVB. The fifth factor, the fact that California law provides the rule of decision on the merits, as well as the fact that the arbitrators at JAMS/ENDISPUTE by agreement were to decide the issue of arbitrability weighs very heavily in Nissan's favor. Although it is undisputed that M'Lady signed all four Amendments to the Dealer Agreement M'Lady has stated that it did not agree to be bound by the terms of these Amendments. The original Dealership Agreement, provided in part, that California law would be applied as to the validity, interpretation, or performance of any of its terms or provisions, or of any rights or obligations of the parties hereof. (Section 17 F.) This factor played a major role in the court's decision in *Moses H. Cone,* and this Court finds that, when all the factors are considered together, M'Lady has not satisfied the exceptional circumstances test nor has it shown why this court should relinquish jurisdiction. The court must now determine whether the claims asserted by M'Lady in their action before the MVB are barred by *res judicata.*

## The Doctrine of *Res Judicata* Is Not Applicable

M'Lady's argument that Nissan's petition is barred by the doctrine of *res judicata* fails as a matter of law because it is undisputed that a final judgment on the merits of Nissan's motion to stay M'Lady's protest before the MVB has not been reached by the Hearing Officer. In Illinois, the preclusive doctrine of *res judicata* applies if (1) a final judgment on the merits has been entered by a court of competent jurisdiction; (2) identity of causes of action exits; and (3) the parties or their privies are identical in both lawsuits." *We Care Hair Dev., Inc. v. Engen*, 180 F. 3d. 838 (7th Cir. 1999). In *We Care Hair*, a group of franchisees filed a lawsuit in Illinois state court in February 1997 against their franchisor. *Id.* at 839. Two months later, in April 1997, *We Care Hair* filed petitions to compel arbitration in this court, asking it to enforce an arbitration clause in its franchise agreements. *Id.* In May and August 1997, the state court entered judgments that the arbitrations clauses were void and unenforceable. *Id. We Care Hair* took an interlocutory appeal to the Illinois Appellate Court. *Id.* In September 1997, while the appeal was pending, Judge Gottschall entered orders compelling the franchisees to arbitrate their claims and enjoining them from taking any further action in the state court lawsuits. *Id.*

The Seventh Circuit affirmed. *Id.* at 844. It rejected the franchisees' claim that the doctrine of *res judicata* barred Judge Gottshcall from compelling arbitration. *Id.* 842. It explained that "federal courts are required to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged. *Id.* "In Illinois, the preclusive doctrine of *res judicata* applies in (1) a final judgment on the merits has been entered by a court of competent jurisdiction; (2) identity of causes of action exists; and (3) the parties or their privies are identical in both lawsuits." *Id.*

12

(citation omitted). The Seventh Circuit noted that the Illinois Court of Appeals had held that the state trial court's order was not final and appealable because it did not dispose of any cause of action in the franchisees' complaint. *Id.* at 840. The Seventh Circuit then concluded that because the state trial court's order was not final, "*res judicata* does not apply, and the district court did not err in conducting its own analysis as to the enforceability of the arbitration clauses." *Id.*

In this case, it is undisputed that the Hearing Officer has only entered a preliminary ruling not a final ruling as to Nissan's motion to stay, and the issue of arbitrability is yet to be decided by the MVB. (Nissan's Exhibit C at 4:21-5:8). There is no final and appealable order pursuant to 815 ILCS 710/31. Therefore, the possibility of appeallate reiview has not been exhausted. Hence, the doctrine of *res judicata* cannot be applied.

### Nissan's Petition to Compel Arbitration is Granted.

Section 4 of the Federal Arbitration Act allows parties who feel their case is not being arbitrated, or is being arbitrated improperly, to petition the court for an order compelling arbitration on the proper terms. 9 U.S.C. § 4. Our analysis of this court's power to order the relief requested in the instant case thus begins with § 4 of the FAA, which both prescribes authority and assigns limitations to federal courts in adjudicating arbitrable disputes. Section 4 allots, in pertinent part, the following authority to federal district courts:

> A party aggreived by the alleged failure, neglect, or refusal of another to arbitrate under a writtent agreement for aribtration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28...fore an order that such arbitration proceed in the manner provided for in such agreement...

9 U.S.C. § 4.

Section 4 thus explicitly provides for a judicial remedy where one party refuses to

13

arbitrate a dispute. Moreover, case law has interpreted § 4 to extend to parties whose grievance is the other party's failure to arbitrate under the terms of the arbitration agreement. *See, Synder v. Smith*, 736 F. 2d 409, 419-20 (7th Cir. 1984), *certiorari denied*, 469 U.S. 1037, 105 S. Ct. 513, 83 L. Ed. 2d 403.

The facts of this case offer a textbook demonstration of the inefficiencies and potential inequities to be achieved if the dictates of § 4 are ignored. M'Lady had agreed to arbitrate with JAMS/ENDISPUTE in California. Instead M'Lady filed its protest with the MVB. Nissan then filed its arbitration demand with JAMS/ENDISPUTE. After appearing in both forums Nissan then filed its § 4 petition with this court. The result total inefficiency. Although M'Lady's protest claim is based upon IMVFA, 815 ILCS 710/1 et seq., the parties still agreed in Amendment No. 4 to resolve their disputes arising out of or relating to their agreement through arbitration with JAMS/ENDISPUTE. The Supreme Court has made clear that the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim found on statutory rights." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185 (1987).

For all of the foregoing reasons, this court holds that the claims asserted by M'Lady in the action before the MVB are subject to arbitration and Nissan in this federal action is entitled to an order compelling M'Lady to arbitrate its claims as required by the arbitration clause in Amendment No.4.

## Injunctive Relief

Having concluded that M'Lady's claim must be arbitrated, this court must now decide whether it may properly enjoin the action before the MVB from further proceedings on the

14

complaint filed by M'Lady there. In *We Care Hair,* 180 F.3d. at 838, 844 the Seventh Circuit concluded that once the district court determined that the arbitration clauses were valid, it did not abuse its discretion in enjoining appellant from proceeding in the state court lawsuit. Because M'Lady disputes the validity of the arbitration clause we decline to issue injunctive relief. Rather, the more appropriate relief at this stage is to stay the proceeding until a ruling is reached by the arbitration panel at JAMS/ENDISPUTE. This court finds that in the particular circumstances of this case, the legitimate functioning of the MVB would not be disrupted, since the administrative action proceeded no further than the initial stages of discovery and has now been pending for only six months. This court further finds that the policies embodied in the federal arbitration act militate against having ongoing state proceedings at the very time that those same claims are the subject of arbitration proceedings. This court does not lightly interfere with the proceedings of a state administrative body. Nevertheless, this court concludes that the principles of judicial economy, the strong judicial policy expressed by the Supreme Court favoring arbitration, and the policies embodied in the federal arbitration act warrant a stay of the MVB protest action. Therefore, Nissan's motion for an injunction is denied but a stay is issued. Finally, Nissan's motion for attorneys' fees is denied for failure to comply with Fed. R.Civ.P. 54(d)(2)(B) and L.R. 54.3.

## CONCLUSION

For the reasons set forth above M'Lady's motion to dismiss is denied (#10) and Nissan's motion to compel arbitration before JAMS/ENDISPUTE granted (#1). All proceedings in the case of *M'Lady v. Nissan,* No. 78-00, Illinois MVB, are hereby stayed. This case is hereby terminated. This is a final and appealable order.

SO ORDERED

ENTERED: 6/21/07

/s/ Ronald A. Guzman

HON. RONALD A. GUZMAN
United States Judge