# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1290 | **DATE** | 3/24/2004 |
| **CASE TITLE** | Nissan vs. Jim M'Lady Oldsmobile | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 4/7/04 at 9:30 am.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Order. Nissan's motion for summary judgment on its petition to compel arbitration [49-1] is denied. Status set for Wednesday April 7, 2004 at 9:30 AM.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 25 2004 date docketed | |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | 2004 MAR 24 PM 2:51 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NISSAN NORTH AMERICA, INC.         )
                                    )
            Petitioner,             )
                                    )   Case No. 01-C-1290
     vs.                            )
                                    )
JIM M'LADY OLDSMOBILE, INC. d/b/a   )   Judge Joan B. Gottschall
JIM M'LADY NISSAN                   )
                                    )
            Respondent.             )
_____)

**DOCKETED**

**MAR 2 5 2004**

## MEMORANDUM OPINION AND ORDER

Petitioner Nissan North America, Inc. ("Nissan") has sued to compel one of its dealers, respondent Jim M'Lady Oldsmobile, Inc. ("M'Lady"), to arbitrate a dispute concerning Nissan's termination of M'Lady's dealership, and to enjoin related, dealership-initiated proceedings before the Illinois Motor Vehicle Review Board. In June of 2001, the district court granted Nissan's petition and compelled arbitration, holding that the termination dispute fell under the arbitration clause of Amendment No. 4 to the parties' Dealer Agreement. However, the Seventh Circuit reversed the district court and remanded the case to this court for further proceedings to resolve the issues (1) whether the Dealer Agreement (and its arbitration clause) had expired, and (2) if so, whether the parties entered into any subsequent agreement covering this dispute. Nissan has moved for summary judgment, arguing that the undisputed facts show that the Dealer Agreement remained in force after its expiration date and that there was no subsequent oral agreement between the parties supplanting the terms of the Dealer Agreement. However, because there are genuine disputes of

material fact regarding both of the issues that concerned the Seventh Circuit, summary judgment is denied.

## FACTUAL BACKGROUND

In 1992, Nissan and M'Lady executed a written "Dealer Agreement" that allowed M'Lady to operate as an authorized dealer of Nissan cars and trucks. Among other terms, the Dealer Agreement required M'Lady to construct an "Exclusive Nissan Showroom" by the Agreement's expiration date.[1]

The issue before this court – whether the parties' termination dispute should be sent to arbitration – hinges, in part, on whether (and when) the Dealer Agreement expired. The Agreement was initially set to expire automatically on April 1, 1995. However, the parties agreed to several amendments to the Agreement extending its term. The final amendment, "Amendment No. 4," was executed on May 18, 1998 and extended the Dealer Agreement's term to May 1, 1999. Unlike the original Dealer Agreement and prior amendments, Amendment No. 4 contained an expansive arbitration clause, providing that "Binding Arbitration with JAMS/ENDISPUTE, an independent and professional agency providing arbitration services," would be the exclusive means of resolving any dispute "arising out of" the Dealer Agreement.

On April 14, 1999 – about two weeks before the end of the Dealer Agreement's term – Nissan sent M'Lady a written notice of default based on M'Lady's alleged failure to complete an Exclusive Nissan Showroom. The notice gave M'Lady sixty days to cure the default. On June 25, 1999 – after M'Lady indicated that it was planning to commence construction on the showroom project – Nissan informed M'Lady that it would be willing to grant M'Lady a 180-day extension,

---

[1] In addition to dealing in Nissan products, M'Lady conducts sales and service operations for Oldsmobile and Isuzu products.

until December 14, 1999, to correct its breach. The June 25, 1999 letter did not expressly offer to extend the Dealer Agreement. After the new December deadline passed, Nissan, on January 19, 2000, issued a Notice of Termination, terminating M'Lady's dealership.

However, over the following months – amid continuing negotiations between the parties – Nissan agreed to several stays of its termination of M'Lady's dealership. On May 8, 2000 – after M'Lady indicated to Nissan that it was considering selling the dealership – Nissan offered to stay the effective date of termination until July 14, 2000 to allow M'Lady to submit "an acceptable proposed transfer of assets."

After further telephone calls and meetings between the parties, Nissan again offered to extend the termination date. On June 27, 2000, Nissan sent M'Lady a letter offering four different proposals on how the parties could proceed. Among other proposals, Nissan offered to extend the effective date of termination for another 90 days in exchange for M'Lady's promise either to remove all other makers' automobiles from the dealership, or to secure an acceptable proposal to sell the dealership. On July 6, 2000, M'Lady accepted Nissan's proposal. M'Lady claims that the June 27 and July 6 letters evidence that the parties had negotiated a new agreement setting the terms of their relationship.

On August 2, 2000, Nissan sent M'Lady a proposed "Amendment No. 5" to the Dealer Agreement which reflected the terms of the parties' June 27 and July 6 correspondence and provided for an extension of the Dealer Agreement to January 8, 2001. Although the initial draft of Amendment No. 5 contained an arbitration clause similar to that appearing in Amendment No. 4, a later draft of Amendment No. 5 – signed by Nissan but not by M'Lady – did not contain that

clause. Ultimately, M'Lady refused to execute Amendment No. 5, telling Nissan that the Amendment did not accurately reflect the agreement of the parties and that M'Lady did not agree to arbitrate disputes between the parties. On October 3, 2000, Nissan issued its final Notice of Termination.

M'Lady subsequently filed a protest with the Illinois Motor Vehicle Board ("MVB") challenging Nissan's termination of the dealership. M'Lady alleged in its October 20, 2000 protest petition that Nissan did not have good cause to terminate the dealership and, therefore, Nissan violated the Illinois Motor Vehicle Franchise Act, 815 ILCS § 710/4(d)(6).

In February, 2001, Nissan filed a petition in the federal district court under the Federal Arbitration Act, 9 U.S.C. § 4, to compel arbitration of the termination dispute and enjoin the MVB proceedings. On June 21, the district court issued an order denying M'Lady's motion to dismiss Nissan's petition, staying the Board proceedings, and summarily granting Nissan's petition to compel arbitration. *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, No. 01-C-1290, 2001 WL 709482 (N.D. Ill. June 25, 2001). The court held that M'Lady was required to arbitrate its dispute pursuant to the arbitration clause contained in Amendment No. 4. *Id.* at *8.

On appeal, the Seventh Circuit reversed the district court, holding that outstanding issues regarding the existence of an agreement to arbitrate the termination dispute required further inquiry. *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, 307 F.3d 601, 602 (7th Cir. 2002). The Seventh Circuit remanded the case to this court for further proceedings to decide (1) whether the Dealer Agreement had expired, and (2) what – if any – other agreements governed the relationship between Nissan and M'Lady.

## ANALYSIS

Nissan moves for summary judgment claiming that its petition to compel arbitration should be granted because (1) the 1992 Dealer Agreement and Amendment No. 4 to that Agreement remain in force and, therefore, continue to bind the parties to arbitrate their termination dispute, and (2) M'Lady has failed to show any evidence that the parties proceeded under a different agreement altering the terms of the Dealer Agreement.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.*

In this case, the Seventh Circuit found that there is a genuine issue as to whether a viable arbitration agreement governs the parties' termination dispute. The Seventh Circuit, therefore, expressly asked this court to resolve two key questions bearing on the arbitrability of that dispute: (1) whether the Dealer Agreement containing the arbitration clause expired on May 1, 1999, and (2) whether the parties entered into any other agreements governing their relationship.

In so ordering, the Seventh Circuit expressed "doubts as to whether Nissan produced sufficient evidence of arbitrability." *M'Lady*, 307 F.3d at 602. Nissan has not presented additional undisputed facts in support of its summary judgment motion that resolve those doubts and could allow this court to rule as a matter of law. To the contrary, genuine disputes of material fact remain regarding both of the issues that caused the Seventh Circuit to remand.

First, there is a genuine dispute of material fact regarding the very existence of an agreement to arbitrate this dispute. As the Seventh Circuit stated:

> a contract that by its own terms expired in 1999 cannot possibly be the basis of the parties' current dealership arrangement, and thus the termination of the current relationship cannot, at least absent additional evidence, be said to relate in any way to the expired contract.

*M'Lady*, 307 F.3d at 604. Nissan argues – as it did before the Seventh Circuit – that it "waived" the expiration date of the Dealer Agreement when it repeatedly offered to extend the date of its Termination Notice. However, that argument has the same flaw it had when it was rejected by the Seventh Circuit. As the Seventh Circuit noted, "Nissan offers only letters it sent to M'Lady *offering* to extend the term and never explains whether or how M'Lady *accepted* those offers." *Id.* Moreover, the letters on which Nissan relies do not contain offers to extend the contract term, but rather offers by Nissan to forbear early termination of the dealership based on M'Lady's purported breaches. *Id.*

Contrary to Nissan's argument that the Dealer Agreement is still in force, M'Lady has offered evidence that (a) the Dealer Agreement expired by its own terms on May 1, 1999, (b) Nissan's subsequent extension letters made no express mention of extending the term of the Agreement, (c) M'Lady expressly refused to sign Amendment No. 5 because it purported to extend the Dealer Agreement's arbitration clause, and (d) in an April 14, 2000 conversation with M'Lady, Nissan's

Regional Vice President, Thomas Hushek, informed M'Lady that the dealership was operating without a Dealer Agreement in place.[2] When viewed in the light most favorable to M'Lady, those facts could allow a reasonable juror to find that the Dealer Agreement expired on May 1, 1999 and that the parties did not agree to extend the expiration date.

Second, there is a genuine dispute of material fact as to the existence of – and terms of – any agreements entered into by the parties after the Dealer Agreement's expiration date. Nissan is correct that Jim M'Lady's deposition sheds little light on M'Lady's allegation that the parties entered into an oral contract subsequent to May 1, 1999. However, the undisputed facts clearly reflect that the parties engaged in near-constant negotiations after that date and that, in at least one instance – the June 27 and July 6 correspondence – appear to have entered into an agreement that deviates in some respects from the requirements of the Dealer Agreement. Nissan counters that – even if the Dealer Agreement expired by its terms – the parties' "course of dealing" reflects the parties' understanding of an implied extension to the Agreement. It is possible that, after May 1, 1999, notwithstanding other negotiations, the parties proceeded with the understanding that their relationship was still governed by the strict terms of the Dealer Agreement. However, Nissan has

---

[2] Nissan points out that, in filling in the blanks on its October 20, 2000 Illinois Motor Vehicle Board Notice of Protest Form, M'Lady identified the 1992 Dealer Agreement in the space marked "Current Franchise Agreement." Nissan claims that this form, filed with the MVB, constitutes a binding judicial admission by M'Lady in this proceeding that conclusively establishes that the Dealer Agreement remains in force. However, the MVB form is not a pleading or a response to a request to admit. Rather, it is a standard cover sheet, created by the Illinois Secretary of State's Office, that is not intended to provide a full explanation of the protesting party's position and offers no space for factual detail. Nissan provides no authority that supports its argument that such an administrative form constitutes a binding judicial admission. While the MVB form could conceivably be admissible as *evidence* in this case, the court does not find that the form constitutes a conclusive judicial admission.

not presented sufficient undisputed facts that would allow the court to make that determination as a matter of law.

Resolution of the issues raised by the Seventh Circuit will require a fact-intensive inquiry into the parties' intentions regarding the terms governing their relationship throughout the termination dispute. For that reason, summary judgment is inappropriate and this matter should proceed to trial as contemplated in Section 4 of the Arbitration Act. 9 U.S.C.A. § 4 ("if the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof").

## CONCLUSION

Nissan's motion for summary judgment on its petition to compel arbitration is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 23, 2004